# Philip Benner *against* William W. Cotgreave.

Domestic attachment issued against an absconding debtor under the act of 2d March 1723. On the application of the defendant afterwards to enter special bail, the court will not dissolve the attachment provided it issued on due grounds ; though they will in a clear case, protect the debtor from the malevolence or mistake of his creditors.

THIS was a writ of domestic attachment in case, issued in the Court of Common Pleas of Allegheny county, on the 11th May 1804, on filing of the affidavit required by law, returnable to the following June term. The sheriff returned, that he had attached sundry merchandize and the books of accounts of the defendant, and the court appointed auditors under the act of assembly.

At an adjourned court held on the 4th August 1804, the defendant appeared in his proper person, and moved the court by his counsel for leave to enter special bail, and that thereupon the attachment should be dissolved. The court on argument, overruled the motion, as not admissible in law; and the cause

[Benner v. Cotgreave.]

was then removed under a special allocatur, to September term 1804.

At a Circuit Court held at Pittsburgh, November 3d 1804, before YEATES and SMITH justices, Messrs. Addison and Ross renewed the motion, for leave to enter special bail, which had been made in the Common Pleas. It was admitted, that since the attachment was taken out, a *capias* in case had issued on the 23d August 1804, at the suit of John Tomlinson against the defendant, wherein bail had been marked in $265 and 46 cents, and *a capias* in debt in 174l. 2s. on the 4th October following, at the suit of William Richard Seabrook against the defendant, on both which writs he had been arrested, and had given special bail. It was further admitted, that the defendant when the attachment issued, was an absconding debtor, within the meaning of the act of assembly of 2d March 1723. 1 Dall. St. Laws, 195. § 1.

*231]

But it was contended, that all the acts of assembly relative to attachment, were intended merely to enforce an appearance, and the entry of special bail.

They are all predicated on facts existing as against absent persons.

Here some of the creditors arrest the person of the defendant ; while the present plaintiff for the supposed use of all his creditors, locks up all his property real and personal, and claims the disposition of it ; although ultimately that disposition will not and cannot operate as a discharge of his person from his imprisonment, or as a complete exemption of future property from the debts now contracted.

The court cannot interpose, and prevent a creditor's remedy by arrest for his debts. It would contradict every principle of common sense and common justice. At the same time it cannot be denied, that to take from a man every species of his property, rights as well as credits, to secure the interests of the general mass of his creditors, and at the same time, to permit some of his creditors to carry on suits against him, must be radically wrong.

The court, to prevent injustice, must have a superintending power over their process. The act is silent in what instances they shall use their discretion as to dissolving attachment, but their authority in this particular is implied in the nature of the case. An upright and able trader is frequently obliged to go abroad, on his mercantile affairs : if an unprincipled creditor, perhaps of indigent circumstances, should be so hardy as to take the oath required by the act, or even an honest creditor should do it through mistake, the court on application of the party injured, would supersede the process, if he came before the court in due and convenient time. The rights of the creditors in general, do not attach immediately on service of the attachment, or the return thereof, or the appointment of auditors. 1 Atky. 67, 104, 152. In cases of bankruptcy, which is an action

and execution in the first instance, the petitioning creditor gives bond to prove the facts stated in his petition upon oath : but this is not necessary under the attachment law, and therefore the cases are dissimilar.

Here the end of the attachment is answered. The debtor appears, and offers special bail: he is entitled to a trial by jury, on *the present demand made against him ; and unless there [*232 are strong and imperious terms in the law, restrictive of the powers of the court, the judges will allow him this right.

Mr. Collins for the plaintiff answered, that it has been admitted already, that the defendant here was at the time of issuing the attachment, within the true meaning of the law of 2d March 1723.

If that fact had been denied, we were ready to establish it by due proof, and that the defendant has attempted to swindle his creditors out of $24,000.

The question therefore is not as to the court's power of interfering and setting aside attachments, improvidently or unfairly issued, but whether such circumstances exist in the present instance, as will justify their interposition.

The process of foreign attachment was introduced to compel the appearance of distant creditors ; but domestic attachments operate on persons, who have been inhabitants of the state, and have absconded from their usual abode for six days, with design to defraud their creditors. They are therefore founded on a supposed fraud established upon oath, which puts the party out of the general system of a common debtor, and are analogous to the commissions of bankruptcy, though they do not correspond therewith in all their parts.

By the 4th section of the act, no second or other attachment can issue, unless the first attachment be not executed, or happens to be dissolved by the court. The inference is irresistible, that all the creditors have an interest in a domestic attachment which has been duly executed, provided it has issued on good grounds.

The commission of bankrupt is expressed to be in behalf of the petitioner, and all other creditors. A petitioner is no more concerned, than any others that shall come in. 2 Cha. Ca. 192, 193. The commissioners have power to examine the bankrupt upon interrogatories, &c. The assignees may sell lands and goods, and sue for debts. The overplus of the bankrupt's estate is to be returned. In all these particulars, the auditors appointed have the same powers under the 6th, 7th and 10th sections of our law.

Unless the bankrupt has satisfied all his creditors, (1 Atky. 146,) or there has been some error in issuing the commission, or misbehaviour in the commissioners, the chancellor will not supersede the commission. Sel. Cha. Ca. 46. 2 Wils. 545. The usual course is, for the lord chancellor to order the bankruptcy to be tried on a feigned issue at law. 1 Atky. 128, 218. If in-

[Benner v. Cotgreave.]

deed it appear plainly, to have been taken out fraudulently and *vexatiously, he will at once supersede the commission, and order the petitioner's bond to be assigned.    1 Atky. 144.    But those facts do not come in question here ; the auditors are under the controul of the court.

It is presumed, no ground has been laid before the court to dissolve this attachment.    All the creditors are interested, and their proportions are to be adjusted.    They have nothing from whence they may expect any compensation, but the small remnant of the defendant's property, which has been attached.    If he is restored thereto, they are without remedy, and the compliment paid to him must necessarily be at their expence.

The hardship complained of, is, that two of his creditors have arrested him, while this process of attachment is going on for the joint benefit of all.    It may justly be doubted, whether those creditors who have brought actions, knowing of the pendency of the attachment, are not precluded from coming in under it, as in cases of bankruptcy.

Although a bankrupt is priviledged from arrest during the time allowed by the commissioners for his examination, yet the protection does not extend beyond the enlarged time.    1 Atky. 148.    An execution taken out after the creditors had signed, but before the lord chancellor had allowed the certificate, has been held good.    1 Term Rep. 361.

[NOTE.    It was resolved in Supreme Court, Pesoa v. Passmore, in December term 1804, that a ca. sa. may be served on a bankrupt after the commissioners have signed his certificate of discharge, and before it is allowed by the district judge, under the act of congress of 4th April 1800.]

The hardship therefore is not peculiar to the defendant, who absconded with a design to defraud his creditors.

But if the holding the defendant to bail on the two writs of capias is oppressive, why has there been no application to the court below, to discharge him on common bail ?

And upon the whole, it is hoped that the court will not dissolve this attachment.

The court continued the matter under advisement, in order to enquire whether any practice had prevailed under the attachment law upon this point, and promised to certify their opinion, which was agreed to be entered.

To their great surprise, they could find no instance of such a motion.    They afterwards certified to the clerk of the Circuit Court, that though in a plain and clear case, they would have no difficulty in protecting a debtor from the malevolence or mistake of his creditors, who had issued a domestic attachment *against him, provided he applied in due and convenient time, yet under the circumstances of the present case, they found themselves constrained to overrule the motion, made on the part of the defendant.